UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| PRIEST LITTLE, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 22-cv-2142-JBM |
| ) | |
| JUSTIN T. YOUNG, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MERIT REVIEW ORDER – AMENDED COMPLAINT

Plaintiff, proceeding *pro se* and incarcerated at Danville Correctional Center, files an Amended Complaint under 42 U.S.C. § 1983 alleging an Eighth Amendment deliberate indifference claim. The case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 Fed. Appx. 588, 589 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### ALLEGATIONS

Plaintiff files suit against Defendants Dr. Justin Young, Dr. Johnathan Ek, Wexford Health Sources, Inc. ("Wexford"), John Doe #1 (a nurse at Danville), John Doe #2 (a nurse at Danville), and John Doe #3 (a physical therapist at Danville).

1

Plaintiff alleges that on April 10, 2019, he was helping other inmates at Danville move from one housing unit to another. During the move, Plaintiff was struck by a piece of wood that popped out from a wooden cart and ripped through the flesh of his right bicep muscle. Plaintiff felt immediate, severe pain surrounding the wounded area. The same day, Plaintiff sought medical attention by submitting for medical sick call.

On April 13, 2019, Plaintiff was seen by Defendant John Doe #1, an unidentified nurse at Danville. Plaintiff informed the nurse about his injured right bicep and complained that he was in pain. Defendant provided Plaintiff with Tylenol and Ibuprofen for three days, which Plaintiff claims was ineffective. Plaintiff alleges that Defendant John Doe #1 failed to refer Plaintiff to a doctor and fabricated his medical records by intentionally writing down that Plaintiff complained about his left arm instead of his right arm and by indicating that Plaintiff had "non-specific discomfort" as a way to deny a timely referral to a doctor.

Plaintiff submitted several subsequent medical requests and received no response. On October 16, 2019, Plaintiff was seen at nurse sick call by a different nurse, who is not named as a party. The nurse noted that Plaintiff rated his pain as a 6 out of 10 and that there was a notable difference between Plaintiff's right and left arm muscles. The nurse referred Plaintiff to a doctor.

On October 24, 2019, Plaintiff was seen by Defendant Young and complained about pain and discomfort in his right arm. Defendant Young noted that Plaintiff "sustained a traumatic injury and that he suspected a "biceps tendon rupture." *Id.* at 6. Defendant Young gave Plaintiff analgesic balm and submitted a collegial review form for an ultrasound. On October 31, 2019, Defendant Young's request for an ultrasound was approved.

On November 14, 2019, Plaintiff was seen by Defendant Young and complained of pain in his right arm that was "shooting down his arm to his fingertips of [his] right hand." *Id.* at 7.

2

Plaintiff alleges that Defendant Young prescribed Tylenol, even though he knew it was ineffective for treating Plaintiff's pain.

On November 18, 2019, Plaintiff had an ultrasound of his right bicep. On December 5, 2019, Plaintiff had a follow-up appointment with Defendant Young, who noted that the ultrasound confirmed a partial tear of the distal bicep tendon. Defendant Young submitted a collegial review form for an orthopedic referral. The referral request was approved on December 12, 2019.

On February 13, 2020, Plaintiff went to the "Carle Physician Group, Hand Surgery Clinic" for a consultation. James Berkes, a non-party physician assistant, concluded that there was no surgical solution because ten months had passed since Plaintiff's injury occurred. Berkes also noted that Plaintiff had lost some strength and recommended that Plaintiff work on strengthening his arm.

On February 25, 2020, Plaintiff was seen by Defendant Young, who noted that Plaintiff still reported intermittent neuropathy. Defendant Young submitted a collegial review form for physical therapy. The request was approved on March 12, 2020, but Defendant Young did not send Plaintiff to Carle Hospital for a physical therapy evaluation until August 2020.

On August 12, 2020, Plaintiff went to nurse sick call and complained that he was experiencing constant and throbbing pain after starting physical therapy.

Plaintiff states that he does not have his complete medical files for August 2020 through December 2020.

On August 13, 2021, Plaintiff was seen by non-party physical therapist Amber Paige, who noted that Plaintiff's posture was poor; he had decreased strength in his right shoulder; was experiencing tingling in his right hand; and had a deformity due to a distal bicep tendon rupture. Paige recommended in-person physical therapy.

On August 17, 2021, after reviewing the physical therapist's recommendations, Defendant Ek allegedly "turned a blind eye" and failed to approve or deny the physical therapist's recommendations.

On September 9, 2021, after reviewing the physical therapist's recommendations that Plaintiff be allowed to go to the health care unit twice per day to complete shoulder exercises, Defendant Ek again allegedly "turned a blind eye" and failed to approve or deny the physical therapist's recommendations. Plaintiff claims that he never had any physical therapy sessions twice per day and is not being provided with any physical therapy currently. Plaintiff alleges that Defendant Ek was deliberately indifferent by delaying and failing to provide the recommended physical therapy treatment for his bicep tendon rupture, which allegedly exacerbated his physical condition and caused ongoing pains.

Plaintiff claims that Defendant John Doe #2, an unidentified nurse at Danville, failed to file the physical therapy orders to ensure Plaintiff's treatment. He also claims that Defendant John Doe #3, an unidentified physical therapist at Danville, allegedly failed to provide Plaintiff with adequate physical therapy care as medically needed.

Plaintiff alleges that Defendant Wexford encourages and condones its employees' misconduct through established written policies that infringed upon his constitutional rights. For instance, Wexford allegedly advises its employees to "be willing to listen to inmate medical complaints, but keep a healthy amount of suspicion." *Id*. at 10. Plaintiff claims that such policies have encouraged employees at Danville to ignore inmates' complaints, letters, and grievances which allegedly caused Plaintiff to go months without medical treatment. Plaintiff alleges further that Defendant Wexford advises its employees that the "mere existence of a condition does not constitute a responsibility for repair" and "to shoulder the cost of services." *Id.* at 10-11. Plaintiff

4

alleges that Wexford's policies caused Defendants to delay necessary medical treatment for his bicep tendon rupture and surgery. Finally, he asserts that Defendant Young's and Defendant John Doe #1's failure to refer him for timely specialty care and surgery allowed Defendant Wexford to profit instead of providing him with adequate medical care to repair his bicep tendon rupture.

## ANALYSIS

It is well established that deliberate indifference to a serious medical need is actionable as a violation of the Eighth Amendment. *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and "either acts or fails to act in disregard of that risk." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). A claim does not rise to the level of an Eighth Amendment violation, however, unless the alleged conduct was "deliberate or otherwise reckless in the criminal law sense, which means that the defendant must have committed an act so dangerous that his knowledge of the risk can be inferred or that the defendant actually knew of an impending harm easily preventable." *Antonelli v. Sheahan,* 81 F.3d 1422, 1427 (7th Cir. 1996).

Plaintiff alleges that he injured his arm on April 10, 2019. Plaintiff did not file his Complaint until July 1, 2022. (Doc. 1). It is possible that his claims are untimely. *See Draper v. Martin*, 664 F.3d 1110, 1113 (7th Cir. 2011) ("In Illinois, the statute of limitations period for § 1983 claims is two years, 735 ILCS 5/13-201"). To the extent Plaintiff may assert a continuing violation, the complaint is generally allowed, pursuant to any objection Defendants might later raise. *See Jervis v. Mitcheff*, 258 F. App'x 3, 5-6 (7th Cir. 2007) ("Deliberate indifference to a serious medical need is a continuing violation that accrues when the defendant has notice of the untreated condition and ends only when treatment is provided or the inmate is released."); *see also Heard v. Sheahan*, 253 F.3d 316, 318-19 (7th Cir. 2001).

5

*Defendant John Doe #1*

Plaintiff alleges that Defendant John Doe #1, an unidentified nurse at Danville, was deliberately indifferent by failing to refer him to see a doctor for an examination on April 13, 2019. Plaintiff informed Defendant John Doe #1 that his right bicep was injured and that he was in pain. Defendant John Doe #1 prescribed a three-day supply of Tylenol and Ibuprofen for pain, which Plaintiff claims was ineffective. Plaintiff alleges that the nurse's failure to refer Plaintiff to a doctor delayed his treatment, as Plaintiff did not receive further medical care until October 16, 2019. The lack of a follow-up appointment by Defendant John Doe #1 to monitor the effectiveness of the limited supply of analgesics was problematic, as Plaintiff submitted multiple requests for another medical appointment because he was in pain but did not receive a response for months.

Based on these allegations, the Court finds that Plaintiff has stated a plausible deliberate indifference claim against Defendant John Doe #1 for his alleged failure to monitor the effectiveness of the limited analgesic treatment.

*Defendant Young*

During an examination with Defendant Young on November 14, 2019, Plaintiff informed him that he had pain in his right arm that was "shooting down his arm to his fingertips of [his] right hand." (Doc. 1 at 7). Plaintiff alleges that Defendant Young prescribed Tylenol, even though he knew it was ineffective for treating Plaintiff's pain. However, there was no indication at this time that Plaintiff was suffering from a torn tendon, as the ultrasound was not performed until November 18, 2019.

Plaintiff also alleges that Defendant Young's request for a physical therapy consultation was approved on March 12, 2020, but Defendant Young was deliberately indifferent by waiting until August 2020 to send Plaintiff to Carle Hospital for a physical therapy evaluation. Plaintiff

does not allege that Defendant Young was responsible for scheduling the physical therapy evaluation.

Finally, Plaintiff alleges that Defendant Young failed to refer him for surgery to repair his torn right bicep tendon. As a result, Plaintiff claims that he suffered permanent deformity and life-long pain.

The Court finds that Plaintiff has not stated a plausible deliberate indifference claim against Defendant Young based on these allegations. Plaintiff's allegations do not allow a reasonable inference that the delay in scheduling the ultrasound was in Defendant Young's capability, and until the ultrasound confirmed the exact nature of Plaintiff's injury, there was no basis for him to make a surgical referral.

***Defendant Ek***

On August 13, 2021, Plaintiff was seen by non-party physical therapist Amber Paige, who recommended in-person physical therapy. Plaintiff alleges that Defendant Ek "turned a blind eye" and failed to approve or deny the physical therapist's recommendation on August 17, 2021. Plaintiff also asserts that on September 9, 2021, Defendant Ek failed to approve or deny the physical therapist's recommendations to allow Plaintiff to go to the healthcare unit twice per day to complete shoulder exercises. By failing to provide the recommended physical therapy treatment for Plaintiff's bicep tendon rupture, Plaintiff alleges that this exacerbated his physical condition and caused ongoing pain.

The Court finds that, at the pleading stage, Plaintiff has alleged a tenable claim that Defendant Ek was deliberately indifferent by failing to provide Plaintiff with the recommended physical therapy treatment. *See Perez v. Fenoglio*, 792 F.3d 768, 778 (7th Cir. 2015). A more complete examination of the facts may show that, in Defendant Ek's professional judgment,

Plaintiff's condition did not necessitate physical therapy at that time, or that Defendant Ek was not aware of the need for physical therapy, or that someone else was responsible for the alleged lack of physical therapy treatment. But those details can be explored during discovery. At this stage, Plaintiff has stated a claim that the denial of physical therapy treatment violated the Eighth Amendment.

*Defendants John Doe #2 and John Doe #3*

Plaintiff claims that Defendant John Doe #2, an unidentified nurse at Danville, failed to file physical therapy orders to ensure that he received physical therapy treatment.

Plaintiff alleges that Defendant John Doe #3, an unidentified physical therapist at Danville, allegedly failed to provide Plaintiff with the recommended physical therapy.

Plaintiff's allegations as currently pled are too sparse to sufficiently put Defendants John Doe #2 and John Doe #3 on notice of the claims being brought against them. *See* FED. R. CIV. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Defendants John Doe #2 and John Doe #3 are DISMISSED without prejudice for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915A. Plaintiff will be given a final opportunity to file a Second Amended Complaint within 30 days.

*Defendant Wexford*

Plaintiff also claims that Defendant Wexford is liable pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691-92 (1978). Private corporations have potential liability under *Monell* if they perform a governmental function and, in doing so, injure plaintiff through an unconstitutional policy or practice. *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982). Since there is no *respondeat superior* liability under § 1983, Wexford cannot be liable for the alleged misdeeds of its employees, as employees are responsible individually. *Lewis*

*v. City of Chicago,* 496 F.3d 645, 656 (7th Cir. 2007). Wexford has potential liability only if it had an unconstitutional policy, practice, or custom which caused the constitutional deprivation. *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014).

"Liability may be based on (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policy making authority." *Taylor v. Wexford Health Sources, Inc.*, No.15-5190, 2016 WL 3227310, at *4 (N.D. Ill. June 13, 2016) (citing *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000)). Plaintiff must plead a sufficient factual basis for a *Monell* claim, as it is not enough to merely plead the legal elements of the claim. *McCauley v. City of Chicago*, 671 F.3d 611, 617-18 (7th Cir. 2011).

Plaintiff makes the conclusory assertion that "Wexford's unconstitutional policies and practices [ ] infringe upon the adequate medical care and treatment of inmates/Plaintiff. Wexford's failure to take any corrective action encouraged, and/or condoned the reckless disregard of its subordinate employees, which has caused Plaintiff to be delayed in necessary medical treatment for his serious medical condition." (Doc. 11 at 13). Although Plaintiff claims that other inmates are also affected by Wexford's allegedly unconstitutional policies and practices, he only includes allegations related to his own treatment. These allegations are insufficient to establish a *Monell* claim. *See Gaston v. Ghosh*, No. 11-6612, 2017 WL 5891042, at *14 (N.D. Ill. Nov. 28, 2017) (plaintiff's allegations as to his own treatment were insufficient to establish a policy) (citing *Shields*, 746 F.3d at 796) (isolated incidents did not add up to a pattern of behavior that would support an inference of a custom or policy)).

9

The Court finds that Plaintiff fails to plead a *Monell* claim against Defendant Wexford. As such, Wexford is DISMISSED with prejudice for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915A.

**IT IS THEREFORE ORDERED:**

1. According to the Court's Merit Review of Plaintiff's Amended Complaint under 28 U.S.C. § 1915A, this case shall proceed on the Eighth Amendment deliberate indifference claims stated above against Defendants John Doe #1, Young, and Ek. Additional claims shall not be included in the case above, except in the Court's discretion on motion by a party for good cause shown under Fed. R. Civ. P. 15.

2. Plaintiff is advised that Defendant John Doe #1, an unidentified nurse at Danville, cannot be served. Plaintiff is placed on notice that it is his responsibility, through initial disclosures and discovery, to identify Defendant John Doe #1 and to file a Motion to Substitute when his identity is known and before the end date of discovery. The failure to do so will result in the dismissal of Defendant John Doe #1.

3. Defendant Wexford is DISMISSED with prejudice for failure to state a claim pursuant Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915A.

4. The allegations concerning Defendants John Doe #2 and John Doe #3 are lacking in sufficient detail as to their conduct to state a plausible claim and are DISMISSED without prejudice for failure to state a claim pursuant Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915A. Plaintiff shall have the final opportunity to amend those claims by filing a Second Amended Complaint within 30 days from the entry of this Order. Plaintiff's Second Amended Complaint will replace the Amended Complaint in its entirety. The Second Amended Complaint must contain

all allegations against all Defendants without reference to the Amended Complaint. Piecemeal amendments are not accepted.

5. Plaintiff's Motion for Status of Merit Review [12] and Motion Requesting Merit Review of Amended Complaint [13] are MOOT.

6. This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendants before filing any motions to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.

7. The Court will attempt service on Defendants by mailing a waiver of service. If Defendants fail to sign and return a waiver of service to the Clerk within 30 days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on Defendants and will require Defendants to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

8. Defendants shall file an answer within 60 days of the date the Clerk sends the waiver of service. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until Defendants file a motion. Therefore, no response to the answer is necessary or will be considered. If Defendants have not filed an answer or appeared through counsel within 90 days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter a scheduling order setting discovery and dispositive motion deadlines.

9. If Defendants no longer work at the address Plaintiff provided, the entity for whom Defendants worked while at that address shall submit to the Clerk Defendants' current work address, or, if not known, Defendants' forwarding address. This information shall be used only for effectuating service. Documentation of Defendants' forwarding address shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

10. This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defendants' counsel copies of motions and other documents that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

11. Counsel for Defendants is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendants shall arrange the time for the deposition.

12. Plaintiff shall be provided a copy of all pertinent medical records upon request.

13. Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

14. Within 10 days of receiving from defense counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to defense counsel. The

Clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

      15.     The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

ENTERED: 4/6/2023

                                                                     s/ Joe Billy McDade
                                                                      Joe Billy McDade
                                                                       United States District Judge